UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, DIVISION

LAKEISHA OLIVER,
Plaintiff,

v. CASE NO.

WALMART STORES EAST, LP
Defendant.
_________________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

The Plaintiff complains herein against the Defendant for committing unlawful acts which prohibit discrimination based on membership in a protected class. The Plaintiff is seeking in excess of $500,000.00 to compensate for damages.

**PARTIES**

1. Plaintiff Lakeisha A. Oliver is a resident of Florida.
2. Defendant Walmart Stores East, LP.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this action pursuant to 28 USCS § 1331, as this case arises under the laws of the United States, specifically 42 USCS § 1981.
4. This Court has personal jurisdiction over Walmart Stores East, LP based on Diversity Jursdiction.
5. Venue is proper in the Middle District of Florida pursuant to 28 USCS § 1391, as a substantial part of the events giving rise to this action occurred in Winter Garden, Florida, which is located within the Middle District of Florida.

## STATEMENT OF FACTS

6. Plaintiff is an African American Christian woman.
7. Plaintiff began working for Defendant in August 2017 as a Personal Shopper.
8. At the time of the events described herein, Plaintiff had approximately five to six years of tenure with Defendant.
9. Prior to 2022, Plaintiff had no disciplinary history with Defendant.
10. Plaintiff was a dedicated and hardworking employee who frequently worked beyond her required hours.
11. Beginning in 2021, Asset Protection personnel at Defendant's store engaged in a pattern of following and surveilling Plaintiff throughout the store.
12. On at least two occasions, Asset Protection personnel sat in the breakroom and watched Plaintiff for her entire fifteen-minute break.
13. Asset Protection personnel repeatedly crossed Plaintiff's path while she traveled to and from the breakroom.
14. This surveillance made Plaintiff feel uncomfortable to the point where she preferred to take her breaks in her car rather than in the breakroom.
15. This pattern of surveillance was not limited to Plaintiff but extended to other African American associates and vendors at Defendant's store.
16. In 2022, Defendant hired Aymee Gonzalez as a Department Coach.
17. Gonzalez is identified as Puerto Rican.
18. In 2022, Plaintiff requested Sundays off to attend church, citing her Christian faith and her five-year tenure with Defendant.

19. Plaintiff made this request to Gonzalez with more than one month's advance notice.
20. Gonzalez denied Plaintiff's request for Sundays off.
21. Within three days of denying Plaintiff's request, Gonzalez granted Sundays off to new Hispanic hires.
22. When Plaintiff requested time off for school-related purposes with more than one month's advance notice, Gonzalez instructed Plaintiff to take a leave of absence rather than approving the time-off request.
23. Non-African American associates received approved time-off requests for weeks at a time without being required to take a leave of absence.
24. Gonzalez changed Plaintiff's employment status from full-time to part-time without notifying Plaintiff or obtaining Plaintiff's authorization.
25. Gonzalez added excessive attendance points to Plaintiff's record.
26. Points that had been removed from Plaintiff's record by a team lead reappeared after Gonzalez's intervention.
27. Plaintiff accumulated triple the normal points despite following proper call-out procedures and using Protected Paid Time Off (PPTO).
28. Plaintiff had zero points on her record prior to her initial conversation with Gonzalez about time off.
29. Hispanic employees had negative points removed from their records by Gonzalez.
30. At the time of the events described herein, Plaintiff had worked for Defendant for approximately six years.

31. Despite her six years of tenure, Plaintiff earned only $0.57 more than the $14 starting wage.

32. Other associates with shorter tenure, including associates with only three years of service, earned wages equivalent to or higher than Plaintiff's wages.

33. Some Hispanic associates earned between $16 and $18 per hour.

34. Plaintiff was never provided a formal pay review despite Defendant's policy requiring such reviews.

35. Hispanic employees who threatened to boycott and protest in front of Defendant's store received substantial raises and departmental transfers within 30 days of making their threat.

36. Gonzalez provided Hispanic employees with greater flexibility in scheduling and work rules than she provided to non-Hispanic employees.

37. Gonzalez allowed Hispanic employees to work overtime when other associates, including Plaintiff, were told that no overtime was available.

38. Gonzalez granted Hispanic employees three weeks of vacation.

39. Non-Hispanic Personal Shoppers did not receive the same level of assistance that Hispanic Personal Shoppers received.

40. In October 2022, Plaintiff filed a complaint with Defendant's Ethics Department regarding Gonzalez's discriminatory conduct.

41. Following Plaintiff's ethics complaint, Gonzalez began cutting Plaintiff's hours.

42. Following Plaintiff's ethics complaint, Gonzalez removed Plaintiff from shifts that Plaintiff had picked up on the Walmart associate app, despite the department's need for additional staffing.

43. Following Plaintiff's ethics complaint, Asset Protection surveillance of Plaintiff continued and intensified.

44. Following Plaintiff's ethics complaint, Gonzalez made false statements about Plaintiff's schedule in an attempt to pressure Plaintiff to clock out early and accumulate attendance points.

45. Following Plaintiff's ethics complaint, Gonzalez rejected most of Plaintiff's time-off requests.

46. Following Plaintiff's ethics complaint, Gonzalez made spiteful gestures toward Plaintiff, including telling Plaintiff she was not scheduled when she was in fact scheduled.

47. Following Plaintiff's ethics complaint, Gonzalez began asking other employees whether they had been questioned about her conduct.

48. The disparate treatment Plaintiff experienced affected her financial stability and forced her to quit school in order to maintain her employment.

49. On January 30, 2023, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), Charge Number 510-2022-07755.

50. On June 10, 2024, the EEOC issued Plaintiff a Notice of Right to Sue.

**Count I - Race Discrimination in Violation of 42 USCS § 1981**

51. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 50 as if fully set forth herein.

52. Plaintiff is a member of a protected class.

53. Plaintiff is an African American woman.

54. Plaintiff was qualified for her position and the terms and conditions of her employment.
55. Plaintiff had approximately six years of tenure with Defendant at the time of the events described herein.
56. Plaintiff had no disciplinary history prior to 2022.
57. Plaintiff was a dedicated and hardworking employee who frequently worked beyond her required hours.
58. Plaintiff suffered adverse employment actions.
59. Beginning in 2021, Asset Protection personnel at Defendant's store engaged in a pattern of following and surveilling Plaintiff throughout the store, including watching her in the breakroom during her breaks.
60. In 2022, Gonzalez denied Plaintiff's request for Sundays off to attend church.
61. Gonzalez instructed Plaintiff to take a leave of absence rather than approving Plaintiff's time-off requests, despite Plaintiff providing more than one month's advance notice.
62. Gonzalez changed Plaintiff's employment status from full-time to part-time without notifying Plaintiff or obtaining Plaintiff's authorization.
63. Gonzalez added excessive attendance points to Plaintiff's record, caused points to reappear after they had been removed, and caused Plaintiff to accumulate triple the normal points despite Plaintiff's compliance with proper procedures.
64. Despite Plaintiff's six years of tenure, Plaintiff earned only $0.57 more than the starting wage, while other associates with shorter tenure earned equivalent or higher wages.

65. Plaintiff was never provided a formal pay review despite Defendant's policy requiring such reviews.

66. Similarly situated employees outside Plaintiff's protected class were treated more favorably.

67. Within three days of denying Plaintiff's request for Sundays off, Gonzalez granted Sundays off to new Hispanic hires.

68. Non-African American associates received approved time-off requests for weeks at a time without being required to take a leave of absence.

69. Hispanic employees had negative points removed from their records by Gonzalez.

70. Hispanic employees with shorter tenure than Plaintiff earned between $16 and $18 per hour.

71. Hispanic employees who threatened to boycott and protest received substantial raises and departmental transfers within 30 days.

72. Gonzalez provided Hispanic employees with greater flexibility in scheduling and work rules than she provided to non-Hispanic employees.

73. Gonzalez allowed Hispanic employees to work overtime when other associates, including Plaintiff, were told that no overtime was available.

74. Gonzalez granted Hispanic employees three weeks of vacation.

75. Non-Hispanic Personal Shoppers did not receive the same level of assistance that Hispanic Personal Shoppers received.

76. The pattern of surveillance by Asset Protection personnel extended to other African American associates and vendors but not to non-African American employees.

77. Defendant's conduct was motivated by race.

78. The temporal proximity between the hire of Gonzalez and the escalation of discriminatory conduct against Plaintiff supports an inference of racial motivation.

79. The pattern of favorable treatment of Hispanic employees compared to the treatment of Plaintiff and other African American employees supports an inference of racial motivation.

80. The systematic surveillance of African American associates and vendors by Asset Protection personnel supports an inference of racial motivation.

81. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered damages including lost wages, emotional distress, loss of educational opportunity, and other consequential harms.

**<u>Count II - Retaliation in Violation of 42 USCS § 1981</u>**

82. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 50 as if fully set forth herein.

83. Plaintiff engaged in protected activity.

84. In October 2022, Plaintiff filed a complaint with Defendant's Ethics Department regarding the discriminatory conduct of Gonzalez.

85. Plaintiff's ethics complaint opposed discriminatory practices and constitutes protected activity under federal law.

86. Defendant knew of Plaintiff's protected activity.

87. Plaintiff filed her complaint with Defendant's Ethics Department, which is an internal complaint mechanism maintained by Defendant.

88. Gonzalez began asking other employees whether they had been questioned about her conduct, demonstrating her knowledge of Plaintiff's complaint.

89. Defendant took adverse employment actions against Plaintiff.

90. Following Plaintiff's ethics complaint, Gonzalez began cutting Plaintiff's hours.

91. Following Plaintiff's ethics complaint, Gonzalez removed Plaintiff from shifts that Plaintiff had picked up on the Walmart associate app, despite the department's need for additional staffing.

92. Following Plaintiff's ethics complaint, Asset Protection surveillance of Plaintiff continued and intensified.

93. Following Plaintiff's ethics complaint, Gonzalez made false statements about Plaintiff's schedule in an attempt to pressure Plaintiff to clock out early and accumulate attendance points.

94. Following Plaintiff's ethics complaint, Gonzalez rejected most of Plaintiff's time-off requests.

95. Following Plaintiff's ethics complaint, Gonzalez made spiteful gestures toward Plaintiff, including telling Plaintiff she was not scheduled when she was in fact scheduled.

96. There was a causal connection between Plaintiff's protected activity and the adverse employment actions.

97. The adverse employment actions began immediately after Plaintiff filed her ethics complaint in October 2022.

98. The temporal proximity between Plaintiff's ethics complaint and the subsequent adverse actions establishes a strong causal connection.

99. Gonzalez's conduct of asking other employees whether they had been questioned about her demonstrates consciousness of guilt and retaliatory intent.

100. Prior to filing her ethics complaint, Plaintiff had no disciplinary history and was a dedicated employee, yet after filing her complaint, she was subjected to a pattern of adverse actions.

101. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered damages including lost wages, emotional distress, and other consequential harms.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant as follows:

1. Compensatory damages against Defendant for lost wages, including past and future lost wages, in an amount to be determined at trial.
2. Compensatory damages against Defendant for emotional pain, suffering, mental anguish, loss of enjoyment of life, and other nonpecuniary losses pursuant to 42 USCS § 1981a, in an amount to be determined at trial.
3. Compensatory damages against Defendant for other consequential harms, including loss of educational opportunity, in an amount to be determined at trial.
4. Punitive damages against Defendant pursuant to 42 USCS § 1981a, in an amount to be determined at trial, for engaging in discriminatory and retaliatory

practices with malice or reckless indifference to Plaintiff's federally protected rights.

5. Injunctive relief requiring Defendant to cease discriminatory and retaliatory conduct and to take affirmative steps to prevent future discrimination and retaliation.
6. Declaratory relief pursuant to 28 USCS § 2201 declaring that Defendant's conduct violated Plaintiff's rights under 42 USCS § 1981.
7. Reasonable attorney's fees and costs pursuant to 42 USCS § 1988.
8. Pre-judgment and post-judgment interest as allowed by law.
9. Such other relief as the Court deems just and proper.

Respectfully submitted: April 24, 2026

/s/ ***Jerry Girley***
Jerry Girley, Esquire
The Girley Law Firm, PA
Florida Bar No. 0035771
117 East Marks Street, Suite A
Orlando, Florida 32803
Tel: (407) 540-9866
Fax: (407) 540-9867
phyllis@thegirleylawfirm.com